Dear Mr. Wimberley:
Your request for an Attorney General's opinion on behalf of the Town of Church Point has been assigned to me for research and reply. Your request regards the town police officers and whether they need to be re-appointed to their positions at the first regular meeting of a newly elected administration, as follows:
 1. Must police officers of a municipality operating under the Lawrason Act be reappointed by the police chief and approved by the board of aldermen at the first regular meeting succeeding each regular municipal election?
 2. If the law does require such reappointment, and the chief's recommended appointment is not approved by the board of aldermen, is the officer's employment terminated by law or is a recommendation of the Chief necessary for the board of aldermen to take action to terminate that officer's employment?
The Lawrason Act provides for the appointment and dismissal of police personnel by the mayor and board of aldermen, upon the recommendation of the chief of police:
 A. The marshal shall be the chief of police and shall be ex officio a constable. He shall have general responsibility for law enforcement in the municipality, and shall be charged with the enforcement of all ordinances within the municipality and all applicable state laws. He shall perform all other duties required of him by ordinance. In those municipalities governed by the provisions of this Part, R.S. 33:321 et seq., which have a chief of police elected by the qualified voters thereof, he shall make recommendations to the mayor and board of aldermen for appointment of police personnel, for the promotion of officers, to effect disciplinary action, and for dismissal of police personnel. Such nominations or recommendations are to be made regardless of race, color, disability, as defined in R.S. 51:2232(11) or creed.
B. * * *
R.S. 33:423 (Emphasis added).
It has been and remains our opinion that police personnel are employees of the municipality. We have advised that R.S. 33:362 provides for the board of aldermen to provide by ordinance for policies and procedures regulating the employment of municipal employees, which includes the creation of police personnel positions. La.Atty.Gen.Op. No. 99-48 (enclosed herein). These police personnel positions, however, can only be filled and/or vacated upon the recommendation of the elected chief of police and the approval of the mayor and the board of aldermen.
In response to your first and second questions, it is our opinion that the police personnel of the Town of Church Point remain in their employment unless removed by recommendation of the elected chief of police and the approval of such action by the mayor and the board of aldermen at any meeting held for that purpose. As discussed in Attorney General Opinion No. 98-460, enclosed herein, the court made in very clear in Thibodeaux v. Hernandez, 702 So.2d 1157 (La.App. 3rd Cir. 1997) that the aldermen and mayor lack the authority to unilaterally terminate a police officer over the objection of the elected chief of police. Thus, it is necessary for the chief of police to make a recommendation for either the appointment or dismissal of police personnel before the aldermen and mayor may take any action.
Trusting that this opinion answers your questions, we remain
Yours very truly,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 ___________________________ ANGIE ROGERS LAPLACE Assistant Attorney General
RPI/ARL;mjb
Enclosures
Date Released: February 28, 2003
OPINION NUMBER 99-48
April 29, 1999
71 — MUNICIPALITIES
La.R.S. 33:362(A)(3) La.R.S. 33:423
All employees of the police department, including part-time and auxiliary officers, are included in the term "police personnel."
The board of alderman may create police personnel positions by ordinance, but the filling of the positions is done after recommendation by the chief of police and approval of the mayor and the board of alderman.
The Honorable Deano Thornton, Mayor City of Winnfield P.O. Box 509 Winnfield, Louisiana 71483
Dear Mayor Thornton:
Your request for an Attorney General's opinion has been forwarded to me for research and reply.
Specifically, you ask:
 1) Does the term "police personnel" as referred to in La.R.S. 33:423 include part-time non-civil service officers and auxiliary officers?
2) What is the procedure for appointing these officers?
The answers to both questions are found in La.R.S. 33:362(A)(3) and 33:423
which are as follows in pertinent part:
 § 362 Exercise of municipal powers; legislative,executive
 A.(3) Subject to law, including R.S. 33:423.2 and 423.3, and applicable civil service rules and regulations, the board of aldermen shall, by ordinance, provide policies and procedures regulating the employment of municipal employees including the hiring and firing of such employees.
 § 423 Duties of marshal
 A. The marshal shall be the chief of police and shall be ex officio a constable. He shall have general responsibility for law enforcement in the municipality, and shall be charged with the enforcement of all ordinances within the municipality and all applicable state laws. He shall perform all other duties required of him by ordinance. In those municipalities governed by the provisions of this Part, R.S. 33:321 et seq., which have a chief of police elected by the qualified voters thereof, he shall make recommendations to the mayor and board of aldermen for appointment of police personnel, for the promotion of officers, to effect disciplinary action, and for dismissal of police personnel. Such nominations or recommendations are to be made regardless of race, color, disability, as defined in R.S. 51:2232(11), or creed.
 B. The provisions of Subsection A of this Section shall not be construed to limit or restrict the provisions of R.S. 33:423.3.
With regard to your first question, this office has repeatedly opined that all employees of the police department, including part-time and auxiliary officers, are included in the term "police personnel." Attached is Louisiana Attorney General Opinion No. 93-386 which deals with the administrative authority over the auxiliary police force and states, "This office has repeatedly recognized that in a Lawrason Act municipality, the elected chief of police has supervisory power and authority over police department personnel."
Your second question asks for the procedures for appointing officers. According to La.R.S. 33:362(A) the board of aldermen, "shall, by ordinance, provide policies and procedures regulating the employment of municipal employees including the hiring and firing of such employees." This provision is supplemented by La.R.S. 33:423 which states, "In those municipalities . . ., which have a chief of police elected by the qualified voters thereof, he shall make recommendations to the mayor and board of aldermen for appointment of police personnel, . . . ." Therefore, the board of aldermen may create police personnel positions by ordinance, but the filling of the positions is done after recommendation by the chief of police and approval of the mayor and the board of aldermen.
We trust this sufficiently answers your questions. However, if you should need further information, do not hesitate to contact this office.
Very truly yours,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 BY: ____________________________ FRANCES J. PITMAN ASSISTANT ATTORNEY GENERAL
RPI/FJP/sc
OPINION NUMBER 98-460
January 6, 1999
60 Law Officers 71 Municipalities
Addresses general questions of authority concerning an elected chief of police and his municipal governing authority, where all are covered by the provisions of the Lawrason Act.
Honorable Vern A. Breland Chief of Police P.O. Box 1204 Sterlington, LA 71280
Dear Chief Breland:
You are the elected chief of police of the Town of Sterlington, which is governed by the provisions of the Lawrason Act, LSA-R.S. 33:321, etseq. You have presented several questions to us for resolution concerning the powers and duties statutorily granted to one holding your official position. We respond to your questions in chronological order.
Question One
 Under the Lawrason Act, R.S. 33:321, et seq., does the Board of Alderman have the authority to tell an elected chief of police who he can hire or fire?
Our response to your first question requires application of LSA-R.S.33:423 defining the duties of an elected chief of police, which pertinently provides:
 ". . . . .In those municipalities governed by the provisions of (the Lawrason Act) which have a chief of police elected by the qualified voters thereof, he shall make recommendations to the mayor and board of aldermen for appointment of police personnel, for the promotion of officers, to effect disciplinary action, and for dismissal of police personnel. . . . ."
There is now jurisprudence interpreting the foregoing statute which specifically answers your first question. In the case of Thibodeaux vs.Hernandez, 702 So.2d 1157 (La.App. 3rd Cir. 1997), the court resolved the power struggle between the board of aldermen and an elected chief of police concerning hiring and firing of police employees as follows:
 ". . . . we conclude that the Aldermen and Mayor lacked the authority to unilaterally terminate (a police officer) over the objection of the elected chief of police. . . . . . ." See Thibodeaux, supra, at page 1159.
The court further cited with approval the following language from an opinion issued by this office:
 "The ultimate decision concerning any layoffs of police personnel due to budgetary constraints rests with the board of aldermen. However, the discipline or dismissal of a police employee by the board of aldermen Is contingent upon the recommendation made by the chief of police." (Emphasis added); see Thibodeaux, supra, at page 1159 and Attorney General Opinion 93-405.
Additional language from Thibodeaux, at page 1159, directs that "R.S.33:423 vests and common sense dictates in elected chiefs of police a stake in the hiring and firing of police officers." We adopt the determination of the court, as we are required to do, and answer your first question as follows: your recommendation is required in order for the board of aldermen to hire or fire police personnel. Otherwise, the board of aldermen could "make such critical personnel decisions without the chief of police's input or concurrence" in contradiction to the directives of the court in Thibodeaux. Thibodeaux, at page 1159.
Question Two
 If the Board of Alderman has not enacted an ordinance that provides for Policies and Procedures regulating the employment of municipal employees, including the hiring and firing, who has the authority to do such hiring or firing, the Board of Alderman or the elected chief of police?
LSA-R.S. 33:362(A)(1) and (3) empowers the board of aldermen to provide by ordinance policies and procedures "regulating the employment of municipal employees including the hiring and firing of such employees" but as the court noted in Thibodeaux, the statute "fails to mention police officers". See Thibodeaux, at page 1159. Nonetheless, we infer from R.S. 33:423 that the board of aldermen retain appointment and dismissal authority over police personnel despite the fact that no formal procedures manual may have been adopted. The court has instructed that an elected chief of police's "input or concurrence" is mandatory concerning such "critical personnel decisions". See Thibodeaux, at pages 1158 and 1159. Again, as in the instance of dismissal of police personnel, the hiring of police personnel is contingent upon your recommendation as chief of police.
Question Three
 Do the employees of the police department of an elected chief of police fall under the authority of the elected chief of police or the mayor and board of alderman under Lawrason Act R.S. 33:404? I need clarification as to whether an elected chief is responsible for all aspects of his department from the hiring and firing to the daily running of his department and what role the board of alderman play in this aspect.
This office has rendered numerous opinions holding that an elected chief of police has control over the administration of his department in a Lawrason Act municipality. The chief of police is the final authority in the day-to-day operation of his office and equipment. The governing authority cannot revoke or impair the inherent powers of an elected chief of police, which powers have been defined "as the power to supervise the operation of the police department and assign its personnel and control its equipment." See Opinions 98-204, 97-393, 95-135. Again, note that the board of aldermen hire and fire police personnel, subject to your mandatory recommendation.
Question Four
 Does the Board of Alderman set the qualifications for the police department employees or does the elected chief of police?
While the chief of police may adopt a policy and procedure manual with respect to qualifications of potential police employees, the Board of Alderman is not bound by these criteria. Again, the ultimate authority to hire and fire rests with the Board and the chief of police cannot, by way of internal policy, disrupt or impair that authority. See Attorney General Opinion 98-204.
Question Five
 Can an outgoing chief of police and Board of Alderman enter into a contract for training services which will continue into another chief of police's term and affecting his budget? If so, can the contract be legally broken by the newly elected chief once his term begins?
We refrain from directly responding to this question regarding the legality of a contract with which we are unfamiliar. However, please refer to Attorney General Opinion 98-438, attached, in which we concluded that a contract involving the expenditure of municipal funds requires the approval of both the mayor and the board of aldermen. This factor would, in our opinion, be determinative of whether the new administration must continue to abide by the contract, absent any other illegality.
Question Six
 Does the Lawrason Act pertain the same to an elected chief of police as to an appointed chief of police?
Yes, the provisions of the Lawrason Act are equally applicable to either an appointed or an elected chief of police. An appointed chief of police enjoys the same powers as an elected chief. See Attorney General Opinion 83-11. A notable difference is that an elected chief of police may only be involuntarily removed from office through the recall election process. See Attorney General Opinion 83-523.
Question Seven
 Can the Board of Alderman set an elected chief of police's work hours or is this under the direct control of the elected chief of police?
The chief of police, as an elected official, is not required to establish specific working hours, but serves on a full-time basis. See Attorney General Opinion 97-431.
We hope the foregoing is helpful to you. Should you require further assistance, please contact this office.
Very truly yours,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 BY: ____________________________ KERRY L. KILPATRICK ASSISTANT ATTORNEY GENERAL
Date Received: Date Released: January 6, 1999